UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JAMES ARMAND,

                            Plaintiff,                          **MEMORANDUM & ORDER**

           -against-                                     11-CV-4182 (NGG) (CLP)

MRS. JENNIFER OSBORNE,

                            Defendant.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Before the court are Defendant Jennifer Osborne's motion to dismiss for failure to state a claim (Def.'s Mot. (Dkt. 40)) and pro se Plaintiff James Armand's motion to amend the Complaint (Pl.'s Mot. (Dkt. 32).)[1] Because Plaintiff has failed to allege a constitutional violation against Osborne, Defendant's motion to dismiss is GRANTED. As explained below, Plaintiff's motion to amend is GRANTED in part and DENIED in part.

**I.    BACKGROUND**[2]

      On August 25, 2011, Plaintiff James Armand, a former prisoner proceeding pro se, brought this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendant Osborne subjected him to harassment and retaliation in violation of his constitutional rights. (Compl. (Dkt. 1) at 4-6.) While incarcerated, Plaintiff was housed at four different facilities:

---

[1] Plaintiff filed a motion to amend his Complaint on May 16, 2012 (Dkt. 23), which the court denied without prejudice in its October 11, 2012 Order (Dkt. 26.) Plaintiff then re-filed his motion to amend on December 13, 2012 (Dkt. 32) and, pursuant to the court's instructions, provided a letter memorandum explaining his proposed amendments on January 16, 2013 (Pl.'s Mem. in Supp. (Dkt. 34).)

[2] The following facts have been taken from the Complaint, additional factual allegations set out in Plaintiff's opposition to Defendant's motion to dismiss, documents incorporated by reference in the Complaint, and documents which the Plaintiff relied on in framing the Complaint. (See infra Section II(A) (explaining documents that may be consulted in deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)).)

1

Southport Correctional Facility ("Southport"), Arthur Kill Correctional Facility ("Arthur Kill"), Fishkill Correctional Facility ("Fishkill"), and Five Points Correctional Facility ("Five Points"). (Compl. at 2, 4-6.) Plaintiff also alleges that he spent time at Willard Drug Treatment Center ("Willard"). (Compl. at 4.) In addition to the pending claims against Osborne, Plaintiff's Complaint asserted that Superintendent Dennis Breslin at Arthur Kill; Sergeant R. Simonson at Fishkill; Superintendent John Lempke, C.O. Mosko, and C.O. Williams at Five Points; and Superintendent Ricky Bartlett at Willard subjected him to harassment, retaliation, and excessive force in violation of his constitutional rights. (Compl. at 4-6.) The court dismissed Plaintiff's claims against Superintendents Breslin, Lempke, and Bartlett in its December 14, 2011 Order (Dkt. 6.) It then severed and transferred Plaintiff's claims against Sergeant Simonson, C.O. Mosko, and C.O. Williams to the judicial district in which the facility that the incidents giving rise to Plaintiff's claims occurred were located, either the Southern District of New York or the Western District of New York, in its October 9, 2012 Order. (Dkt. 26.) Plaintiff's only remaining claims at this time are harassment and retaliation against Osborne. Plaintiff seeks to amend his Complaint to (1) add claims for harassment, retaliation, disclosure of personal information, "thought process monitoring," "altered mental health records," and illegal incarceration; (2) add Arthur Kill staff members James Hession ("Hession"), Sergeant Dougan ("Dougan"), and J. Malfi ("Malfi"); the Department of Corrections; and unnamed agencies and correctional staff as defendants; and (3) increase his punitive damages request to two and a half million dollars. (Pl.'s Mot.)

Plaintiff alleges that shortly after his arrival at Arthur Kill on March 22, 2011, Hession, a member of the counseling staff, threatened him with retaliation if he filed legal claims related to Willard. (Compl. at 4.) Plaintiff states that he wrote a letter to his sentencing judge, "Judge

Solomon," complaining of threats he had received at Arthur Kill. (Id.) No mention of Osborne was made in the letter to Judge Solomon. (Pl.'s Mem. in Opp'n (Dkt. 47) at 5.) Plaintiff alleges that after he wrote this letter, counselor aid Osborne told him numerous times that he "smell[ed] like shit," in response to which he said he would report her. (Id. at 3-4, 6.) Plaintiff asserts he made a verbal complaint to a supervisor about Hession and Osborne and then filed a written grievance against Hession; Plaintiff specifically notes that he did not include Hession's alleged threat of retaliation in that grievance. (Compl. at 3-4; Pl.'s Mem. in Opp'n at 5.) Plaintiff states that he had two verbal confrontations with Osborne, during which she called him various derogatory names and once threatened to change his job assignment and he threatened to report her. (Pl.'s Mem. in Opp'n at 5-6.) During a meeting in Osborne's office shortly after the second such confrontation, Plaintiff alleges that Osborne slammed a folder on a desk and pointed her finger at Plaintiff. (Id. at 6.) Plaintiff states that Osborne then brought Hession into the room at which point Hession verbally threatened Plaintiff and pointed his finger in Plaintiff's face so that Hession's finger touched Plaintiff's eye lashes. (Id. at 7.)

Plaintiff states that he was then "allowed to leave [and] . . . went directly to the grievance office to file a complaint." (Id.) While attempting to do so, he was told to leave and approached by Dougan who told Plaintiff that "Osborne was married to a correction officer and that this officer is a good friend of [the sergeant and] they [were] going to teach [Plaintiff] a lesson." (Id. at 7-8.) Plaintiff states he was then "push[ed] and shoved down the hallway" into Dougan's office; Dougan then allegedly made Plaintiff turn toward the wall and stood by while and "unknown officer aggressively frisk[ed]" the Plaintiff, which included "slam[ing Plaintiff's] chest into the wall while pressing [Plaintiff's] head into the wall." (Id. at 8.) Plaintiff alleges he was then "push[ed] and drag[ged] to the Special Housing Unit ("SHU"), where he overheard

3

Dougan telling an officer that Plaintiff had been threatening staff members. (Id.) Plaintiff states that this officer then immediately approached Plaintiff, "shoved his face into the wall," and threatened him. (Id.) Plaintiff alleges that he received injuries from these physical incidents, but was not treated. (Id.)

Plaintiff also alleges various forms of mistreatment while he was in SHU, including verbal assault, officers throwing his food on the ground, not being allowed to shower, and being drugged, among other things. (Compl. at 7.) Plaintiff does not assert that Osborne, Hession, Dougan, or Malfi carried out any specific mistreatment he received in the SHU nor does he allege any facts suggesting their personal involvement in such mistreatment.

Plaintiff faced a disciplinary hearing at Arthur Kill stemming from the alleged incident in Osborne's office, for which he received a "25 day loss of everything." (Id.) Plaintiff alleges that Osborne fabricated the misbehavior report, which was then "endorsed by Hession and Malfi," that resulted in this disciplinary hearing. (Pl.'s Mem. in Opp'n at 8-9.) Plaintiff states he was transferred to Fishkill on May 7 or 8, 2011, and has not returned to Arthur Kill.[3] (Compl. at 8-11.)

## II. LEGAL STANDARD

Where a plaintiff proceeds pro se, the court must construe the pleadings liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Chavis v. Chappius, 618 F.3d 162, 171 (2d Cir. 2010). Application of the liberal pro se pleading standard is particularly important in cases in which the plaintiff alleges a violation of his civil rights. See Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191 (2d Cir. 2008) (citing McEachin v. McGuinnis, 357 F.3d 197, 200 (2d

---

[3] The court has reviewed the entire Complaint and recites only those facts that are relevant to claims Plaintiff has asserted against Osborne or requests to add in his motion to amend. The court has omitted facts related to events that occurred after Plaintiff left Arthur Kill, as all claims related to those events were severed and transferred to the judicial district in which the facility the incident occurred at is located.

Cir. 2004)). A pro se complaint should not be dismissed without granting the plaintiff leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999). In making its determination, the court must assume all facts alleged in the complaint to be true and must construe the complaint in the light most favorable to the plaintiff. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). However, the court does not afford this same "presumption of truthfulness" to "legal conclusions, deductions or opinions couched as factual allegations." Id. (internal quotation marks omitted) (quoting U.S. v. Bonanno Organized Crime Family of La Cosa Nostra, 879 F.2d 20, 27 (2d Cir. 1989)).

### A.  Motion to Dismiss Standard

A complaint may only be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 557).

The materials a court may consider when deciding a motion to dismiss under Rule 12(b)(6) are limited. "[A] district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Additionally, the court can consider documents provided by the defendant that "a plaintiff chooses not to

5

attach to the complaint or incorporate by reference," but which the plaintiff "has relied upon . . . in framing the complaint." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991). If any other material is considered, the court must convert the motion to dismiss into a motion for summary judgment. See Fed R. Civ. P. 12(d) (requiring conversion "[i]f, on a motion under Rule 12(b)(6) [,] . . . matters outside the pleadings are presented to and not excluded by the court"). Where, as here, a pro se plaintiff includes factual allegations in his opposition to the motion to dismiss that were not included in the original complaint, "the court may treat the new factual assertions as an amendment to the complaint," and thereby consider the additional factual assertions without converting the motion into a motion for summary judgment. Grimes by and through Grimes v. Sobol, 832 F. Supp. 704, 708 n.5 (S.D.N.Y. 1993) (quoting Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 26 (2d Cir. 1988)). Here, the Plaintiff did provide additional factual allegations in his opposition to Defendant's motion to dismiss. The court has considered the factual allegations contained in Plaintiff's opposition to Defendant's motion to dismiss as amendments to the Complaint and has treated Defendant's motion to dismiss as a motion to dismiss the further amended Complaint under Fed. R. Civ. P. 12(b)(6). Plaintiff's memorandum in support of his motion to amend also includes some additional factual allegations, which do not pertain to Defendant Osborne and the motion to dismiss and which the court has only considered in relation to Plaintiff's motion to amend the Complaint. In order to construe the Plaintiff's pleadings liberally, all additional factual allegations from Plaintiff's opposition to Defendant's motion to dismiss have been considered as part of the Complaint for the purposes of reviewing Plaintiff's motion to amend, which focuses on adding new defendants and causes of actions.[4]

---

[4] For purposes of the motion to dismiss, the court has considered additional factual allegations relevant to Plaintiff's claims against Osborne. To the extent the additional factual allegations are instead relevant to claims that Plaintiff

B.  **Motion to Amend Standard**

Federal Rule of Civil Procedure 15 governs amendment of pleadings. Rule 15(a)(2) provides that unless a party may amend his pleading as of right pursuant to Rule 15(a)(1), which is not possible here, it "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Id.

"In the absence of any apparent or declared reason – such as . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). An amendment is futile "when the proposed new pleading fails to state a claim on which relief can be granted. . . . The adequacy of a proposed amended complaint to state a claim is to be judged by the same standards as those governing the adequacy of a filed pleading." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012). A court "should not deny leave to file a proposed amended complaint unless th[e] same rigorous standard [governing a motion to dismiss] is met. This principle should be applied with particular strictness when the plaintiff seeks to file an amended complaint charging a violation of his civil rights." Riccuiti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). "[C]laims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (citing Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993)). Likewise, a motion to amend that seeks to add this type of conclusory conspiracy claim may be denied because it would fail as a matter of law.

---

seeks to bring against other defendants pursuant to his motion to amend, the court has considered them in connection with that motion.

7

## III. DISCUSSION

### A. Motion to Dismiss Claims Against Defendant Osborne

Defendant argues that Plaintiff's claims against Osborne should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's allegations of verbal abuse do not constitute constitutional claims and he has not exhausted his administrative remedies. (Def.'s Mem. in Supp. (Dkt. 41) at 7-12.) In the alternative, Defendant argues that the claims should be dismissed because Osborne is entitled to qualified immunity. (Id. at 12-14.) Because, as explained below, the court finds that Plaintiff has failed to state a claim against Osborne under § 1983 for which relief can be granted, it need not reach Defendant's additional arguments concerning failure to exhaust administrative remedies and qualified immunity.

There are two necessary elements of a § 1983 claim: "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (internal citations omitted). In order to withstand a motion to dismiss, a complaint must allege specific facts indicating a deprivation of the plaintiff's constitutional rights. See id.

#### 1. Verbal Harassment

Plaintiff has brought claims of verbal threats and harassment against Osborne. It is well established that "verbal harassment, standing alone, does not amount to a constitutional deprivation." Cole v. Fischer, F. App'x 40, 43 (2d Cir. 2010); see also Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). Plaintiff states that Osborne called him derogatory names and made verbal threats to him, but he has not alleged related injury, damage, or infringement upon a constitutional right. Even reading the alleged facts in the light most favorable to the Plaintiff,

8

there is no indication that Plaintiff was deprived of any constitutional right as a result of Osborne's verbal threats and harassment. Therefore, to the extent Plaintiff is asserting claims under § 1983 against Osborne for verbal threats and harassment, those claims are dismissed.

### 2. Retaliation

A plaintiff may bring a § 1983 claim if administrative decisions or functions, such as work assignments or misbehavior reports, are carried out "in retaliation for the exercise of constitutionally protected rights. . . . However, recognizing the possibilities for abuse in claims of this sort, [courts] have insisted on a higher level of detail in pleading them and have held that 'a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone.'" Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).

Plaintiff alleges that Osborne retaliated against him by filing a false misbehavior report in conspiracy with other officers, which he states "resulted in [Plaintiff] being assaulted, being place[d] in SHU. . . . remov[ed] from any alternative program, and [being given an] immediate [p]arole [v]iolation." (Pl.'s Mem. in Opp'n at 11.) Even assuming Osborne's report was false, a false misbehavior report, without more, does not amount to a violation of a prisoner's constitutional rights. See Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law."). Although Plaintiff has made various conclusory allegations concerning the insufficiency of the hearing he faced as a result of this

9

misbehavior report, he has not pled any facts suggesting Osborne's involvement with the hearing process or any possible violation of his due process rights.

Plaintiff also provides no factual allegations in support of his wholly conclusory statements that Osborne filed the report as part of a conspiracy with other officers to ensure that threats against Plaintiff were carried out. The court need not and does not credit these conclusory statements as true. See Ashcroft, 556 U.S. at 678. Plaintiff also alleges that he was harassed and poorly treated by various officers in SHU. Beyond Plaintiff's conclusory allegation that these officers were working in collusion with Osborne and other staff members to carry out threats against him, there are no factual allegations that would suggest even the most remote possibility of Osborne's involvement[5] in the treatment Plaintiff received in SHU.

Plaintiff further alleges that Osborne told him about a change in his prison job assignment during the course of her alleged verbal harassment. "A prison inmate has no constitutional right to any specific prison job and has no recognized expectation in keeping a particular prison job." Holmes v. Artuz, 95 CIV. 2309 (SS), 1995 WL 634995 (S.D.N.Y. Oct. 27, 1995) (citing Gill, 824 F.2d); see also Battice v. Phillip, CV-04-669 (FB)(LB), 2006 WL 2190565, at *8 (E.D.N.Y. Aug. 2, 2006) (finding "no liberty interest in . . . maintaining a particular work assignment"). Prison officials may change work assignments for "constitutionally permissible reason[s] or for no reason at all," but may not change the work assignment in retaliation for an inmate's exercise of a constitutionally protected right. Gill, 824 F.2d at 194 (internal quotation marks and citations omitted). Here, Plaintiff alleges that Osborne told him during one conversation that he was no longer a laundry porter and suggests that he was later assigned to scrub nurse work. (Pl.'s Mem.

---

[5] Plaintiff's allegation that Dougan told him he had to leave Osborne's name out of a grievance complaint he was attempting to file immediately before he was physically harassed and placed in SHU does not establish Osborne's personal involvement in any potential mistreatment that Plaintiff experienced, as Plaintiff has not alleged any facts indicating that Osborne was personally involved in these events.

10

in Opp'n at 6.) Plaintiff does not allege that his job assignment was actually changed following this conversation[6] or, if it was, that this change could have been perceived as an adverse action. In fact, it appears that a change would have been positive; Plaintiff asserts that he told Osborne: "his talent isn't doing laundry it['s] being a Scrub Nurse," and that approximately ten days later, he had another discussion with her in which she referred to him as a scrub nurse. (Pl.'s Mem. in Opp'n at 6.) Taking Plaintiff's factual assertions as true, Plaintiff has asserted either that he remained in the same job or that he was transferred to a job in which he had expressed more interest, neither of which supports a finding of retaliation.

Therefore, to the extent Plaintiff is asserting claims under § 1983 against Osborne for retaliation, those claims are dismissed.

### B. Motion to Amend

Plaintiff seeks to amend the Complaint to (1) add claims for harassment, retaliation, disclosure of personal information, "thought process monitoring," "altered mental health records," and illegal incarceration; (2) add Arthur Kill staff members Hession, Sergeant Dougan, and Malfi; the Department of Corrections; and unnamed agencies and correctional staff as defendants;[7] and (3) increase his punitive damages request to two and a half million dollars. (Pl.'s Mot.) Defendant objects to all of Plaintiff's requests to amend because of prejudice to the Defendant and futility of the proposed amendments. (Def.'s Obj. (Dkt. 56).) In order to construe the pro se Plaintiff's motion liberally, the court has considered his motion to amend in

---

[6] It is unclear whether Plaintiff was working as a laundry porter, scrub nurse, both, or neither, at the time of this conversation. Although Osborne allegedly told Plaintiff he was "no longer a laundry porter," Plaintiff's alleged response regarding his work as a scrub nurse indicates that Osborne may have simply been incorrect about his work assignment at the time. (Compl. at 6.)

[7] Plaintiff specifically requests "to add Mr. James Hession, SGT Dougan, [and] SCC J. Malfi," but also discusses potential claims against the other listed individuals and entities. (Pl.'s Mot.) Construing the pro se Plaintiff's motion liberally, the court has considered every potential defendant mentioned in the Plaintiff's motion to amend. Additionally, as it is unclear which claims the Plaintiff seeks to bring against the various proposed defendants, the court has considered each proposed claim as it relates to each proposed defendant.

conjunction with the additional factual allegations set out in Plaintiff's opposition to Defendant's motion to dismiss, which, as explained above, the court has treated as a motion to amend.

### 1. The Department of Corrections

Plaintiff's motion to amend alleges wrongdoing by the New York State Department of Corrections ("DOC"). It is well established that the DOC, as an agency of the state, is immune from suit under the Eleventh Amendment. See Odom v. New York State Dept. of Corr. Servs., 122 F.3d 1057, 1995 WL 595550, at *3 (2d Cir. 1995) (unpublished disposition). Section 1983 claims do not abrogate this Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 341 (1979). Therefore, to the extent Plaintiff seeks to amend his Complaint in order to assert any claims against the DOC, that motion is denied.

### 2. Unnamed Prison Staff and Agency

Plaintiff alleges that he was subjected to "two beating[s] by Correctional Officers and their Superiors." (Pl.'s Mot.) Plaintiff has not made any specific factual allegations concerning when or where these alleged incidents took place, nor has he proposed any facts suggesting that further discovery would be able to identify such information. His bare assertions of wrongdoing by unnamed officers are insufficient to state a cause of action. See Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (stating that "complaints relying on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). As such, these proposed claims are futile and would fail as a matter of law. To the extent Plaintiff seeks to add claims against these unnamed individuals,[8] or against any individual for the alleged beatings,[9] his motion is denied.

---

[8] Plaintiff has not alleged that these unnamed officers were personally involved in any other wrongdoing against him.

12

Plaintiff's also alleges wrongdoing on the part of an unnamed "agency," in conjunction with the DOC. (Id.) Plaintiff has not put forward any factual allegations in support of the existence of this unnamed agency or its involvement with the DOC. Although the court views Plaintiff's pleadings liberally, it need not give credit to such conclusory allegations. Plaintiff's allegations do not warrant even the presumption that such an agency exists. Because any claims against such unnamed agency would be futile, the court denies Plaintiff's motion to amend insofar as it seeks to add claims against an unnamed agency.

### 3. Retaliation

As discussed above, a plaintiff may bring a § 1983 claim based on retaliation if administrative decisions or functions have been carried out in retaliation for the plaintiff's exercise of a constitutionally protected right. See supra Section III(A)(ii). Even when a plaintiff is appearing pro se, courts may require "a higher level of detail" for retaliation claims because of the "possibilities for abuse." Gill, 824 F.2d at 194. A motion to amend that "alleges retaliation in wholly conclusory terms," may be denied because such a complaint would be subject to dismissal under 12(b)(6). Id. (citing Flaherty, 713 F.2d at 13).

To the extent Plaintiff attempts to reassert retaliation claims against Osborne, his request is denied. Plaintiff's motion to amend does not assert any new factual allegations against Osborne. As discussed above, the court has considered all factual allegations made in relation to Osborne and finds that Plaintiff does not have a cognizable cause of action against Osborne based on retaliation.

To the extent Plaintiff requests to add retaliation claims against any individual, other than Osborne, based on her allegedly false misbehavior report, that request is also denied. As

---

[9] Plaintiff does not assert any facts supporting the personal involvement of anyone other than these unnamed individuals in the alleged beatings and therefore he cannot amend his Complaint to include any claim premised on these alleged beatings.

13

discussed above in relation to the motion to dismiss such claims against Osborne, a false misbehavior report, without more, is not a violation of a prisoner's constitutional rights. See supra Section III(A)(ii). Plaintiff states that Hession and Malfi were involved in the filing of the misbehavior report with Osborne, but has alleged no facts indicating their involvement in any potential violation of his due process or any other constitutional rights during the hearing process that arose from the misbehavior report. Any such retaliation claim would, like the one against Osborne, fail as a matter of law.

Plaintiff also requests to add a retaliation claim premised on "using the court as a platform." (Pl.'s Mot.) Plaintiff broadly asserts that various prison officials acted against him in retaliation, but he provides no factual allegations in support of this claim. Rather, he gives only his conclusory statements that these acts were carried out in retaliation. The court is not required to afford such conclusory statements the presumption of truthfulness, even on a motion to amend, and therefore will deny plaintiff's motion to amend insofar as it seeks to add a cause of action based on retaliation against any defendant.

### 4. Harassment

Plaintiff seeks to add causes of action for threats and harassment, which, based on the law and Plaintiff's factual allegations, the court has considered as a request to add claims for harassment under § 1983. As stated above, allegations of verbal harassment, without more, are insufficient to state a cause of action under § 1983. See supra Section III(A)(i). Harassment of a prisoner does not violate a constitutional right unless it is so drastic as to violate the Eighth Amendment right to be free from cruel and unusual punishment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "Conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Id. "[A] *de minimis* use of force," including "push[es] or

shove[s], even if it may later seem unnecessary in the peace of a judge's chambers," does not typically violate a prisoner's constitutional rights. Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000) (internal citations and quotation marks omitted).

Plaintiff's Complaint, read liberally, asserts facts that may support a claim of harassment against Sergeant Dougan. Plaintiff states that Dougan pushed him down a hallway after removing him from the complaint office while he was attempting to file a complaint and then engineered and observed an incident in which an unnamed officer "aggressively frisked" Plaintiff, including slamming Plaintiff's chest into a wall and pressing Plaintiff's head into the wall. (Pl.'s Mem. in Opp'n at 8.) Plaintiff's Complaint also suggests that Dougan may have been present for a second episode of physical harassment against Plaintiff shortly after he brought to SHU. Plaintiff alleges injuries arising from these incidents. Plaintiff's factual allegations concerning Dougan's actions and personal involvement in the actions of others against Plaintiff are at least sufficient to warrant discovery. The court will therefore allow Plaintiff to amend his Complaint in order to state a cause of action for harassment against Sergeant Dougan.

As to allegations of harassment against other potential defendants, construing the allegations in the light most favorable to the Plaintiff, he states only that Hession verbally threatened him and, on one occasion, pointed his finger in Plaintiff's face so that Hession's finger was touching Plaintiff's eyelash. Plaintiff does not allege that there was further physical contact nor does he allege any injuries arising from this incident. The court finds that the sole alleged physical act of touching Plaintiff's eyelashes, even if unnecessary, does not constitute a constitutional violation. Any claim for harassment against Hession is futile and would fail as a matter of law.

15

Plaintiff's broad assertions that Hession, Osborne, and Malfi were involved in placing Plaintiff in SHU through an allegedly false misbehavior report is not enough to suggest their personal involvement in actions taken against Plaintiff while he was in SHU. Plaintiff alleges more serious and specific injuries that occurred during his time in SHU, but the court need not assess the severity of those allegations as Plaintiff has not asserted facts indicating the personal involvement of any proposed defendant in those actions. Without at least some factual allegations to support the personal involvement of proposed defendants in the actions that gave rise to the alleged harassment, Plaintiff's claims are futile and would fail as a matter of law. The court therefore denies Plaintiff's motion to amend insofar as it seeks to assert a cause of action for harassment against any individual other than Dougan.

5. Additional Causes of Action

Plaintiff moves to add claims for "disclosure of personal information [,] . . . thought process monitoring, [and] . . . altered mental health records." (Id.) Plaintiff also appears to generally contest the length of his confinement in the New York state prison system. (Id.) As an initial matter, the court finds that "thought process monitoring," is not a cognizable legal claim, but rather a vague allegation of conspiracy.[10] Plaintiff has not provided explanations or factual allegations to indicate the existence of any legal or factual support for this proposed cause of action.

As to the claims premised on disclosure of personal information and altered mental health records, Plaintiff appears to be asserting a violation of his constitutional right to privacy. However, upon a full review of the Complaint and the additional factual allegations made in

---

[10] Plaintiff includes a reference to "Remote Neural Monitoring" ("RNM") in an apparent attempt to support his claim of thought process monitoring. The court agrees with other district courts, which have routinely dismissed claims based on RNM as frivolous. See, e.g., Frederick Banks v. State Farm, 2:13-cv-1152, 2013 WL 6058471, at *4 (W.D. Pa. Nov. 18, 2013); Carmichael v. Fed. Bureau of Prisons, 10-4866 (MJD/JJG), 2010 WL 5829239, at *1 (D. Minn. Dec. 20, 2010).

Plaintiff's opposition to Defendant's motion to dismiss, the court cannot find any factual allegations pertaining to Plaintiff's time at Arthur Kill[11] that would support these conclusory allegations.

Regarding his alleged illegal incarceration, Plaintiff appears to attribute this alleged wrongdoing primarily to the DOC and the unnamed agency, neither of which, as discussed above, may be added as defendants in this action. (Id.) To the extent Plaintiff moves to include a cause of action against any other potential defendant for wrongful incarceration, he has stated no factual allegations which could indicate that he was wrongfully incarcerated by the staff at Arthur Kill or that any staff member at Arthur Kill had even minimal involvement in decisions about Plaintiff's parole once Plaintiff had been transferred to other facilities.

Because the court finds that the Plaintiff cannot maintain these claims, Plaintiff's requests to amend his Complaint to add causes of action for thought process monitoring, disclosure of personal information, altered mental health records, and illegal incarceration are denied as futile.

6. Damages

Plaintiff moves to amend his Complaint to increase the amount of punitive damages sought from $800,000 to $2,500,000. (Compl. at 5; Pl.'s Mot.) Absent prejudice to the defendant, an amendment to increase damages is typically allowed. See Sullivan v. County of Suffolk, CV 04-3651, 2006 WL 2844205, at *11 (E.D.N.Y. June 1, 2006). Here, the Defendant has not specifically addressed the proposed increase in damages, but rather has broadly claimed that it will experience prejudice if the court allows the Plaintiff to amend his Complaint. The court finds that the Defendant will not face any prejudice other than potentially higher liability as

---

[11] Alleged incidents that took place at Fishkill, located in the Southern District of New York, and Five Points or Southport, located in the Western District of New York, will not be considered by the court because Plaintiff's allegations concerning his treatment at facilities in other judicial districts have been transferred to the district in which the alleged actions took place. (See (Dkt. 26).)

a result of the proposed amendment and will therefore grant Plaintiff's request to amend his Complaint to increase his request for punitive damages.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED. Plaintiff's Motion to Amend is GRANTED insofar as it seeks to add a claim for harassment against Sergeant Dougan and increase the punitive damage request and is DENIED in all other respects.

Plaintiff's Complaint shall be deemed amended to reflect the additional factual allegations set out in Plaintiff's opposition to Defendant's motion to dismiss, the harassment claim against Dougan, and the increased punitive damages request. Defendant is to file its answer to Plaintiff's newly amended Complaint, with regard to the pending claim against Dougan only, within twenty (20) days from the date of the entry of this Order.

The court refers the parties to United States Magistrate Judge Cheryl L. Pollak to conduct immediate discovery on the remaining claim.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York  
February 19, 2014

NICHOLAS G. GARAUFIS  
United States District Judge